UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| FIRST PIONEER FARM CREDIT, )<br><br>Plaintiff, )<br><br>v. )<br><br>FIRST PIONEER CREDIT UNION, )<br><br>Defendants. ) | CIVIL ACTION NO.<br>04-12508 GAO |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff First Pioneer Farm Credit, ACA ("First Pioneer") hereby submits this memorandum of law in support of its motion for a preliminary injunction against Defendant First Pioneer Credit Union (the "Credit Union") enjoining the Credit Union from directly or indirectly infringing the "First Pioneer" trademark or using any other mark, word, or name similar to First Pioneer's mark in its signage, or in any press release, advertisement, or promotional material or in connection with the marketing, advertising, or promotion of its financial services.

### FACTUAL BACKGROUND

Plaintiff, First Pioneer, is a corporation organized under the laws of the United States Farm Credit Act of 1971. First Pioneer provides a wide range of financial services, including, among other services, loans, mortgages, property value appraisal, risk management, tax planning, business consulting, and plan succession. Among others, First Pioneer serves farmers, nursery and greenhouse operators, forest products businesses, fishermen, lobstermen, part-time

growers, agribusinesses, and residents of rural areas.  First Pioneer has over 10,000 customers in Massachusetts, Connecticut, New York, New Jersey, Rhode Island, and New Hampshire.

The Credit Union is a corporation with its principal place of business located at 730 Worcester Street, Indian Orchard, Massachusetts. (Verified Complaint ¶5.)  The Credit Union also operates in Springfield, Massachusetts, and in Chicopee, Massachusetts, and has approximately 5,000 members.  (Id.)  Membership in the Credit Union is available to those who work or reside in Hampden, Hampshire, and Franklin Counties, as well as any family members of those who work or reside in those counties, irrespective of where those family members work or live.  (Id.)  The Credit Union, formerly Monsanto Employees Credit Union, is a full service financial institution that provides loans, mortgages, and other financial services in competition with First Pioneer.  (Id.)

A. **Plaintiff's Ownership of the Mark "First Pioneer" Since 1994**

The Plaintiff has been in the financial services business for over 75 years. (Verified Complaint ¶6.)  On November 23, 2004, the Farm Credit Administration ("FCA") approved the formal charter amendment of Southern New England Farm Credit changing its name to First Pioneer Farm Credit.  The effective date of the charter amendment was January 1, 1995.

Beginning in November 1994, the Plaintiff adopted and started using the service mark "First Pioneer" in interstate commerce to identify its services and distinguish them from those provided by others, by among other things, prominently displaying the "First Pioneer" mark in its advertising and promotional materials.  (Id. ¶7.)

Since that time and continuing without interruption, First Pioneer has offered financial services throughout Massachusetts and the eastern United States under the "First Pioneer" service mark.  First Pioneer continues to prominently use the "First Pioneer" mark on its

BOS_468410_4/EANDERSON

advertising and promotional materials, including its website, to identify and distinguish its services from those provided by its competitors. In the ten years that Plaintiff has used the "First Pioneer" mark, the "First Pioneer" reputation and name recognition have grown the "First Pioneer" mark has become well known throughout Massachusetts and the eastern United States. (Id. ¶8.)

Over the years, First Pioneer has spent a substantial amount of time and money in advertising and promotional efforts aimed at establishing the "First Pioneer" service mark in the minds of consumers as a full financial services provider. During the last five years alone, First Pioneer spent on average approximately $100,000 per year in advertisements and promotional materials promoting its "First Pioneer" service mark. (Id. ¶9.) By virtue of these efforts, First Pioneer has developed substantial value, recognition, and goodwill in the mark "First Pioneer" trademark throughout Massachusetts and the eastern United States in the financial services industry.

The Plaintiff registered "First Pioneer" as a service mark in the State of Massachusetts, pursuant to Massachusetts General Laws, Chapter 110B, Section 2, on July 8, 2004. (Id. ¶11.) The Plaintiff registered the mark in the State of New York, pursuant to Article 24 of the General Business Law, on July 20, 2004. (Id. ¶12.) First Pioneer registered the mark in the State of New Hampshire, pursuant to the Model State Trademark Act (RSA 350-A), on July 20, 2004. (Id. ¶13.) The Plaintiff also registered the mark in the State of Rhode Island, pursuant to chapter 6-2-4 of the Rhode Island General Laws, on July 20,2004. (Id. ¶14.) Finally, First Pioneer registered the "First Pioneer" service mark in the State of Connecticut, pursuant to Connecticut General Statutes section 35-11, on August 9, 2004. (Id. ¶15.)

BOS_468410_4/EANDERSON

B. **Defendant's Unauthorized and Illegal Use of the First Pioneer Mark In or About November, 2003**

According to its website, the Credit Union began using the trade name and service mark "First Pioneer" in connection with its financial services in November 2003 -- approximately 10 years after First Pioneer began using the mark. (Verified Complaint ¶16.)

In recent months, the Credit Union began a campaign to advertise and market its financial services -- which are in competition with the Plaintiff's financial services -- under the name "First Pioneer," including the use of radio advertisements, without the Plaintiff First Pioneer's permission or consent. (Id. ¶19.) The Credit Union also recently began utilizing the URL "www.1stpioneercu.com," which is very similar to First Pioneer's "www.firstpioneer.com" website. (Id.)

In February 2004, after learning of the Credit Union's infringing activity, counsel for First Pioneer contacted James Nagy, President and CEO of the Credit Union, and notified Nagy and the institution that (1) First Pioneer was the owner of the mark "First Pioneer," which First Pioneer had used continuously and exclusively in the promotion and advertisement of its financial services; (2) First Pioneer had invested heavily in and built substantial value, goodwill, and reputation in the mark "First Pioneer;" and (3) the Credit Union's activities were infringing First Pioneer's intellectual property rights in its mark. (Id. ¶18 and Ex. A.)

Following First Pioneer's initial letter, at the Credit Union's request, the parties explored the possibility of a concurrent use agreement that might allow the Credit Union to continue using the "First Pioneer" mark, but they were unable to identify any such use that would avoid consumer confusion. (Id. ¶19.) In particular, the FCA has said that it would find the names confusing and that concurrent use of the names would violate FCA policy. (Id. ¶20.)

- 4 -                                                                    BOS_468410_4/EANDERSON

On November 15, 2004, after unsuccessful discussions with the Credit Union to attempt to resolve its dispute regarding the Credit Union's infringing activity, First Pioneer sent a letter to the Credit Union's counsel again notifying the Credit Union of its infringing use of the "First Pioneer" mark and requesting, within three business days, a proposal from the Credit Union to withdraw all infringing uses of First Pioneer's service mark.  (Id. ¶21 and Ex. B.)

Despite due demand that it refrain from using First Pioneer's service mark in commerce (*i.e.*, advertising and marketing of its financial services), the Credit Union has engaged in a campaign of false and misleading advertising designed to infringe upon First Pioneer's intellectual property rights, confuse the public about the origin of the Credit Union's services, injure the Plaintiff's goodwill, and dilute the quality of its distinctive "First Pioneer" mark. (Id. ¶23.)  Accordingly, First Pioneer has been forced to bring its Complaint and this motion for injunctive relief, to protect the value of its trademark.

**ARGUMENT**

## I.    Standard For Granting Preliminary Injunction

A party seeking a preliminary injunction must establish that "(1) it is substantially likely to succeed on the merits of its claim; (2) absent the injunction there is a significant risk of irreparable harm; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest." Lanier Prof'l Servs., Inc. v. Ricci, 192 F.3d 1, 3 (1st Cir. 1999); Bay State Savings Bank v. Baystate Fin. Servs., Inc., 338 F. Supp 2d 181, 186 (D.Mass. 2004).  An examination of each of these factors demonstrates that First Pioneer is entitled to the preliminary injunctive relief it seeks.

BOS_468410_4/EANDERSON

II.    <u>Likelihood Of Success On The Merits</u>

A. **The Credit Union Has Engaged in Trademark Infringement**

To determine whether the plaintiff is likely to prevail on its claim of trademark infringement, the Court must determine: (1) whether the trademark is valid; and (2) whether the Credit Union is infringing the mark. <u>Public Serv. Co. of New Mexico v. Nexus Energy Software, Inc.</u>, 36 F. Supp.2d 436, 438 (D.Mass. 1999). To demonstrate trademark infringement, a plaintiff must demonstrate: (1) the existence of a valid trademark; (2) the plaintiff's ownership of the mark; (3) likelihood that the defendant's use will confuse the public and thereby damage the plaintiff. <u>Three Blind Mice Designs Co. v. Cyrc, Inc.</u>, 892 F. Supp. 303, 309 (D.Mass. 1994). <u>See</u> <u>also</u> <u>Bayshore Group Ltd. v. Bay Shore Seafood Brokers, Inc.</u>, 762 F. Supp. 404, 409 (D.Mass. 1999) (trademark infringement established by showing a likelihood of confusion among customers or potential customers.

1. **First Pioneer's mark is valid**

To be entitled to protection, a mark must be (1) distinctive; (2) used in commerce; and (3) nonfunctional. <u>Hasbro, Inc. v. Clue Computing, Co.</u>, 66 F. Supp 2d 117, 121 n.4 (D.Mass. 1999). With regard to distinctiveness, federal courts often divide marks into five categories: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. <u>See</u> <u>I.P. Lund Training v. Kohler Co.</u>, 163 F.3d 27, 39 (1st Cir. 1988); <u>Digital Equip. Corp. v. Altavista Tech. Inc.</u>, 960 F. Supp. 456, 478 (D.Mass. 1997). Suggestive, arbitrary, and fanciful marks are deemed inherently distinctive and automatically qualify for trademark protection. <u>I.P. Lund</u>, 163 F.3d at 39; <u>Nautilus Group, Inc. v. IKON Health and Fitness, Inc.</u>, 372 F.3d 1330, 1340 (Fed. Cir. 2004). Case law establishes that the "First Pioneer" mark is arbitrary, or at the very least, suggestive.

BOS_468410_4/EANDERSON

An arbitrary mark is a known term used in an uncommon way. Nautilus Group, 372 F.3d at 1340. Arbitrary marks, when associated with particular goods or services "neither suggest nor describe any ingredient, quality, or characteristic of those goods or services." Ford Motor Co. v. Summit Motor Prods. Inc., 930 F.2d 277, 282 n.18 (3d Cir. 1991) (quoting 1 McCarthy, Trademarks and Unfair Competition § 11:4); see also, e.g., Morningside Group Ltd. v. Morningside Capital Group L.L.C., 182 F.3d 133 (2d Cir. 1999) ("Morningside" considered arbitrary term for financial investment services business); Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., 83 F. Supp. 2d 810 (S.D.Tex. 1999) ("Quantum" considered an arbitrary term for a health club). The "First Pioneer" mark is arbitrary because, although common English words, they do not refer to or suggest anything about financial services, other than the arbitrary association that the Plaintiff has made between that mark and its services.

Even if First Pioneer's mark were not arbitrary, at the very least it must be considered suggestive. A suggestive mark is one that "requires imagination, thought and perception to reach a conclusion as to the nature of goods." Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995) (holding that term "Equine Technologies" was suggestive, and not merely descriptive, of the plaintiff's hoof pad product). Marks are deemed suggestive, rather than merely descriptive, if the product or service associated with the mark does not automatically spring to mind upon observation of the mark. Nautilus Group, 372 F.3d at 1342 (holding that "Bowflex" was suggestive of the curving rods used as part of exercise equipment). At a minimum, First Pioneer's mark is suggestive because financial services do not automatically spring to mind when one hears or sees the term "First Pioneer." One must use a significant amount of imagination to connect that term "First Pioneer" to consumer or commercial loans, mortgages or other financial services.

BOS_468410_4/EANDERSON

Moreover, registered trademarks, like "First Pioneer," are considered inherently distinctive. Equine Techs., 68 F.3d at 545. First Pioneer registered "First Pioneer" as a service mark in the State of Massachusetts, pursuant to Massachusetts General Laws, Chapter 110B, Section 2, on July 8, 2004. First Pioneer has also registered its mark in New York, New Hampshire, Rhode Island, and Connecticut.

Finally, there is no reasonable argument that the "First Pioneer" mark is functional. The mark is not essential to the operation or purpose of any of the Plaintiff's financial services. See I.P. Lund Trading, 163 F.3d at 37, n.5 (describing the means of identifying nonfunctional marks). Because the Plaintiff's mark is distinctive, has been used in commerce, and is nonfunctional, it is valid and enforceable under federal, state and common law.

### 2. First Pioneer Credit Union has Infringed First Pioneer's Mark

The First Circuit has adopted eight factors to be considered to determine a likelihood of confusion of trademarks, including "(1) the similarity of the mark[s]; (2) the similarity of goods and services; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective customers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the plaintiff's mark." I.P. Lund Lending, 163 F.3d at 43. All eight factors indicate a likelihood of confusion in this case caused by the Credit Union's use of the Plaintiff's "First Pioneer" mark.

### a. Similarity of Marks and of Services Provided (Factors 1-2)

The names "First Pioneer Farm Credit" and "First Pioneer Credit Union" are very similar -- they differ by only one word. In addition, the parties both offer a wide range of financial services, including loans, mortgages, and other services, the eastern United States. When two businesses are engaged in such similar businesses and employ such similar names, the likelihood

BOS_468410_4/EANDERSON

of confusion is great enough to warrant a preliminary injunction.  See, e.g., <u>Massachusetts</u> <u>Mutual Life Ins. Co. v. Massachusetts Life Ins. Co.</u>, 356 Mass. 287 (1969); <u>Monroe Stationers &</u> <u>Printers, Inc. v. Munroe Stationers, Inc.</u>, 332 Mass. 278 (1955).

In <u>Massachusetts Mutual</u>, a case involving two insurance companies, the court held that because the defendant adopted a name that was only different by one word from the plaintiff's, and was the same as the name by which the plaintiff was known, there was a likelihood of confusion that would result in unfair competition.  <u>Massachusetts Mutual</u>, 356 Mass. at 294. The court further held that when the defendant chose its name, it was aware that the public might do business with the defendant thinking it was the well-established and successful plaintiff.  <u>Id.</u> Similarly, in <u>Monroe</u>, a case involving two stationary companies, Monroe Stationers had used the name "Monroe Stationers" for the past eight years and the public had come to know it as such.  The court held that the defendant's name was "practically similar to that which had been adopted and continually used by the plaintiff," and that it would have been easy for defendant to have chosen a different name.  <u>Monroe</u>, 332 Mass. at 281.  Similar to the circumstances in <u>Massachusetts Mutual</u> and <u>Monroe</u>, the Plaintiff First Pioneer Farm Credit has been known as "First Pioneer" for ten years and the Defendant's First Pioneer Credit Union played off that name recognition by choosing a name for its competing services that differs by only one word.

### b. Channels of Trade, Advertising, and Classes of Prospective Customers (Factors 3-5)

In trademark infringement analysis, channels of trade, advertising, and classes of prospective customers are often considered together as related or overlapping factors.  <u>Hasbro</u>, 66 F. Supp.2d at 123.  In this case, First Pioneer and the Credit Union, as competing financial services companies in Massachusetts advertise in overlapping regions in an attempt to procure the same potential customers looking for loans, mortgages and other financial services.  In other

BOS_468410_4/EANDERSON

words, there is substantial, complete overlap of the channels of trade, advertising and classes of prospective customers who will come in contact with both parties' use of the "First Pioneer" mark.

First Pioneer provides commercial and consumer loans, mortgages and education loans to full-time and part-time farmers, nursery and greenhouse operators, forest products businesses, fishermen, lobstermen, agribusinesses, and even rural home owners throughout Massachusetts. The Credit Union markets its competing financial services to all residents of western Massachusetts and their family members living elsewhere, using the essentially identical "First Pioneer" mark.

### c. Evidence of Actual Confusion (Factor 6)

The best evidence of likelihood of confusion is that of actual confusion already exists. Planned Parenthood Fed'n of America, Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 489 (1986). The Credit Union's infringing use of the Plaintiff's "First Pioneer" mark already has resulted in a significant amount of actual confusion among customers and potential customers. Specifically, First Pioneer has received several inquiries from customers who thought they were contacting the Credit Union. (Nelson Aff. ¶ 2; Sepe Aff. ¶ 2; Wigmore Aff. ¶ 2.) First Pioneer employees have also received at least one call from a Massachusetts resident who was looking for employment at the Credit Union. (Nelson Aff. ¶ 4.) Similarly, First Pioneer has received calls from members of the community commenting on the institution's new building and new branch location, where the building and branch location referred to actually are owned by the Credit Union, not First Pioneer. (Nelson Aff. ¶ 3; Sepe Aff. ¶¶ 3, 4; Wigmore Aff. ¶¶ 3, 4.)

BOS_468410_4/EANDERSON

### d. The Credit Union's Intent in Developing the Mark (Factor 7)

With the intent to capitalize on the consumer confusion caused by the similarity of the marks, the Credit Union has engaged in an effort to "palm off" the services it provides as those provided by First Pioneer. Upon information and belief, the Credit Union was aware of the fact that First Pioneer used the "First Pioneer" mark in advertising and promotion of its financial services business. When the Credit Union changed its name from the Monsanto Employees Credit Union, First Pioneer had already been using the "First Pioneer" mark for several years. In addition, the Credit Union adopted the URL "www.1stpioneercu.com," which it likely would not have chosen if it did not already know that the URL "www.firstpioneer.com" was taken. The creative length that the Credit Union had to go through to use its infringing name on its website demonstrates a willful effort to misuse First Pioneer's trademark, knowing that it was owned by the Plaintiff. The Credit Union's effort to co-opt the Plaintiff's mark for its own use in marketing competing services strongly supports a finding of likely infringement.

### e. Strength of the Mark

First Pioneer has satisfied the eighth factor by demonstrating the strength of the "First Pioneer" mark. The strength of the mark is evidenced by the fact that it is an arbitrary, or at the very least suggestive mark. Suggestive, arbitrary, and fanciful marks are the strongest trademarks, and as such they are deemed inherently distinctive and automatically qualified for trademark protection. I.P. Lund, 163 F.3d at 39; Nautilus Group, Inc. v. IKON Health and Fitness, Inc., 372 F.3d 1330, 1340 (Fed. Cir. 2004). The "First Pioneer" mark is arbitrary because nothing about it suggests that it would be associated with a financial services business. See § II.A.1, supra. Even if First Pioneer's mark is not arbitrary, it is at the very least suggestive

BOS_468410_4/EANDERSON

because a significant amount of imagination would be required to automatically associate financial services with the term "First Pioneer." Id.

In sum, all eight factors indicate that there is substantial likelihood of confusion between First Pioneer and the defendant's use of the "First Pioneer" mark and that the plaintiff accordingly is likely to succeed on its trademark infringement claim.

## B. The Defendant is Diluting the Plaintiff's Trademark

The Credit Union has engaged in trademark dilution in violation of chapter 110B § 12 of Massachusetts General Laws. For injunctive relief based on a claim of trademark dilution under Massachusetts law, First Pioneer must show: (1) that its mark is registered or "valid at common law;" and (2) that Credit Union's use of the mark is likely to dilute the quality of the mark in some way. M.G.L. ch.110B, § 12; Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1209 (1st Cir. 1983); Bay State Savings Bank v. Baystate Financial Services, LLC, 338 F. Supp.2d 181, 187 (D.Mass. 2004). The "First Pioneer" mark has been registered in the State of Massachusetts. Even if the mark were not registered, however, First Pioneer's mark is valid at common law because it has been used in commerce, because it is non-functional, and because it has demonstrated distinctiveness through its Massachusetts state registration and through the arbitrary or, at a minimum, suggestive nature of the mark. See § II.A.1, supra. Consequently, the only issue left for consideration is whether the Credit Union's misuse is likely to dilute the mark.

Likelihood of dilution can be demonstrated by "(1) injury to the value of the mark caused by actual or potential customer confusion; (2) injury resulting from the use of the mark in a way that detracts from, draws on, or otherwise appropriates the goodwill and reputation associated with plaintiff's mark; or (3) diminution in the uniqueness and individuality of plaintiff's mark."

BOS_468410_4/EANDERSON

<u>Astra</u>, 718 F.2d at 1209. The Credit Union's willful efforts to draw on the established goodwill of the Plaintiff's "First Pioneer" mark, have lessened the capacity of First Pioneer to identify and distinguish its financial services to customers in Massachusetts. By misusing First Pioneer's mark on its website, in its signage and in the advertising, promotion, and marketing of its services, the Credit Union's has blurred the unique association that had previously existed between First Pioneer's mark and the financial services it has provided under that mark since 1994. This blurred association is evidenced, in part, by the fact that customers, potential customers and potential employees have contacted First Pioneer many times in the belief that they were contacting the Credit Union or confused advertising or other "news" concerning the Credit Union with the Plaintiff. (<u>Nelson Aff.</u> ¶¶ 2–3; <u>Sepe Aff.</u> ¶¶ 3, 4; <u>Wigmore Aff.</u> ¶¶ 3, 4.) Future customers looking to do business with First Pioneer, whether searching for the company on the Internet or by other means, are likely to instead stumble upon the Credit Union and its confusingly similar name. As the distinction continues to blur, customers will no longer identify "First Pioneer" with the services provided by First Pioneer Farm Credit. Consequently, because the Credit Union has engaged in acts to dilute the distinctiveness of the "First Pioneer" mark, First Pioneer is likely to succeed on its claim of dilution.

### C. Defendant Has Engaged in Unfair Competition

The Credit Union's action with respect to the "First Pioneer" mark, including without limitation its misleading and deceptive representations to the public on its website and in its signage, press releases, and advertising materials, constitute false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) of the Lanham Act provides protection against the use of "any word, term, name, symbol or device" that "is likely to cause confusion, or to cause mistake, or to deceive" as to the source of a

BOS_468410_4/EANDERSON

product or service or that, through advertising or promotion, "misrepresents the nature,
characteristics, qualities, or geographic origin" of goods or services. 15 U.S.C. §1125(a).

By using the "First Pioneer" mark in its advertising and promotional materials, the Credit
Union has attempted to deceive the public into believing that services provided by the Credit
Union are approved by, sponsored by, or affiliated with, First Pioneer. By using the "First
Pioneer" mark in a way that suggests the Credit Union is associated with First Pioneer, the Credit
Union has misrepresented the nature of its financial services.

The Credit Union's acts regarding the "First Pioneer" mark were committed with the
intent to pass off the Credit Union's services as those of First Pioneer. As a result, potential First
Pioneer customers throughout the Massachusetts and the eastern United States have confused the
services provided by the Credit Union with those provided by First Pioneer. Specifically, First
Pioneer has received several inquiries from customers who thought they were contacting the
Credit Union or who referred to information put out by the Credit Union (*i.e.*, new building or
branch) assuming it concerned the Plaintiff. (Nelson Aff. ¶ 2; Sepe Aff. ¶ 2; Wigmore Aff. ¶ 2.)
First Pioneer employees have also received at least one call from someone looking for
employment at the Credit Union. (Nelson Aff. ¶ 4.)

The Credit Union's acts of unfair competition has enabled and will continue to enable the
Credit Union to obtain business and earn profits to which it is not in equity or good conscience
entitled. Because the Credit Union has misrepresented the qualities of the services it provides by
suggesting that they are associated with First Pioneer and has confused customers into believing
its services are related to those provided by First Pioneer, the Plaintiff is likely to succeed on a
claim on unfair competition.

BOS_468410_4/EANDERSON

### D.  Defendant Has Engaged in Unfair and Deceptive Trade Practices

The Credit Union has willfully and knowingly engaged in unfair methods of competition

and unfair or deceptive acts or practices in the conduct of its financial services business in

violation of chapter 93A of the Massachusetts General Laws.  Mass.Gen.L. ch. 93A, §§ 2, 11.

For the most part, the elements of a claim under chapter 93A mirror the elements of a section

43(a) claim.  Gillette Co. v. Norelco Consumer Prods. Co., 946 F. Supp. 115, 120 n.3 (D.Mass.

1996).  Chapter 93A also allows a business to obtain an injunction against a party engaged in

unfair or deceptive trade practices when the practices have the potential to cause harm.

Mass.Gen.L. ch. 93A, § 11.

Courts have confirmed that Chapter 93A provides relief to a business who is damaged by

the actions of a competitor engaged in misleading or false advertising.  See Abruzzi Foods, Inc.

v. Pasta & Cheese, Inc., 986 F.2d 605, 605–06 (1st Cir. 1993) (noting that misleading advertising

is grounds for a chapter 93A action); Datacomm Interface, Inc. v. Computerworld, Inc., 396

Mass. 760, 769 (1986) (noting that consumer confusion as to sponsorship or endorsement of

product caused by misleading statement may be actionable under chapter 93A).  The

Massachusetts Attorney General has promulgated regulations to enforce chapter 93A that

explicitly provide that "[i]t is an unfair or deceptive act for a seller to make any material

representations of fact in an advertisement if the seller knows or should know that the material

representation is false or misleading or has the tendency or capacity to be misleading."  Skinder-

Strauss Assocs. v. Massachusetts Continuing Legal Educ., Inc., 914 F. Supp. 665 (D.Mass. 1995)

(quoting 940 C.M.R. § 6.04(1) (1995)).

The Credit Union has engaged in an advertising and promotional campaign designed to

profit from the goodwill associated with the Plaintiff's "First Pioneer" mark for the reasons

BOS_468410_4/EANDERSON

explained above, it appears that the Credit Union was aware of the fact that First Pioneer used

the "First Pioneer" mark in advertising and promotion of its financial services business and

willfully sought to co-opt that mark when changing its own name last year.

### III.    Irreparable Harm

If a party seeking an injunction is likely to be irreparably harmed before a decision is

rendered on the merits, the "irreparable harm" element is satisfied. Siera Club v. Larson, 769 F.

Supp. 420, 422 (D.Mass. 1991). In a trademark infringement case, when a likelihood of success

on the merits is proven, irreparable harm is presumed. Societe Des Produits Nestle, S.A. v. Casa

Helvetia, Inc., 982 F.2d 633, 640 (1st Cir. 1992); Aura Comms., Inc. v. Aura Networks, Inc., 148

F. Supp.2d 91, 97 (D.Mass. 2001). By its very nature, trademark infringement results in

irreparable harm because the attendant loss of profits, goodwill, and reputation cannot be

satisfactorily quantified. Id. Consequently, because a trademark owner cannot be adequately

compensated for its losses, irreparable harm flows from an unlawful trademark infringement as a

matter of law. Id.

Even if irreparable harm were not presumed, First Pioneer has shown that it will suffer

irreparable harm if the Credit Union is permitted to continue its infringing use of the "First

Pioneer" mark. The Credit Union has already spent a year using First Pioneer's mark in the

advertising and promotion of its financial services, and even after First Pioneer made the Credit

Union aware of its infringing activity and attempted to work with the Credit Union to devise a

solution to the infringement that would satisfy both parties, the Credit Union has continued to

expand its misuse of the mark. Consequently, because the dilution and confusion caused by the

Credit Union's infringement increases through time, the Plaintiff would certainly would be

irreparably harmed by the Credit Union's continued acts of infringement.

BOS_468410_4/EANDERSON

## IV.   __Balance Of Equities__

As stated above, Plaintiffs have a strong interest in having an injunction issued immediately.  First Pioneer has been using and promoting the mark "First Pioneer" for ten years, whereas the Credit Union only recently changed its name and undertook an advertising program for the new name.  The Credit Union simply could not have invested nearly the time or amount of money in promoting its new name that the Plaintiff has spent over the last decade on the "First Pioneer" mark.

First Pioneer will be greatly harmed if the preliminary injunction is not issued.  The longer the Credit Union is allowed to use the "First Pioneer" mark, the more the name becomes confused with the Credit Union's services.  First Pioneer's governing authority, the FCA, has informed First Pioneer that it will not be able to continue using the "First Pioneer" mark if it becomes confused with the Credit Union's services.  Consequently, if the confusion is allowed to develop to a point where the "First Pioneer" mark is associated with the Credit Union, First Pioneer will be denied the goodwill value of the mark for which it has lawfully spent ten years and hundreds of thousands of dollars in an effort to develop a positive reputation in the public eye.  The Credit Union, has willfully changed its name to infringe upon the Plaintiff's mark, should not be heard to complain about the burden it has now imposed on itself to change its name a second time.

## V.   __Public Interest__

Granting First Pioneer a preliminary injunction will not harm the public interest.  In fact, such a preliminary injunction will serve the public interest because it will put an end to consumer confusion that is created by the Credit Union's use of the mark "First Pioneer."  Without an injunction, unfortunate individuals and businesses would continue to be duped into doing

- 17 -

BOS_468410_4/EANDERSON

business with the Credit Union based on the mistaken belief that they were dealing with an institution that was associated with First Pioneer.

## CONCLUSION

For the foregoing reasons, Plaintiff First Pioneer Farm Credit, ACA, respectfully requests that the Court grant the Plaintiff's Motion for Preliminary Injunction.

FIRST PIONEER FARM CREDIT, ACA

By its attorneys,

*Steven M. Cowley (EAS)*
Steven M. Cowley (BBO #554534)
Elizabeth A. Spinney (BBO # 657848)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

Dated: December 3, 2004

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

*Elizabeth A. Spinney*
Elizabeth A. Spinney

BOS_468410_4/EANDERSON

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST PIONEER FARM CREDIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 04-12508 GAO |
| | ) | |
| FIRST PIONEER CREDIT UNION, | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF NANCY NELSON IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Nancy Nelson, on oath do declare as follows:

1. I am a receptionist for the Enfield, Connecticut office of First Pioneer Farm Credit, ACA.[1]

2. As a receptionist at First Pioneer, I have received several inquiries from members of the community, including current and potential customers, who had confused the Credit Union with First Pioneer.

3. For example, I have received calls from members of the community inquiring about the new branches in Wilbraham or Chicopee, Massachusetts, towns in which First Pioneer Credit Union, and not First Pioneer Farm Credit, maintains branch offices.

4. Additionally, someone living in Hampden, Massachusetts who was looking for a job at the Credit Union recently called me on the mistaken belief that I was employed with the Credit Union rather than First Pioneer Farm Credit.

---

[1] All terms have the meaning provided in First Pioneer's Memorandum of Law in Support of its Motion for Preliminary Injunction.

Signed under the pains and penalties of perjury 3rd day of December, 2004.

_Nancy Nelson_
Nancy Nelson

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

Elizabeth A. Spinney

BOS_BOS_469629_1.DOC/EANDERSON

Signed under the pains and penalties of perjury 3rd day of December, 2004.

_____
Nancy Nelson

### **CERTIFICATE OF SERVICE**

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

_Elizabeth A. Spinney_
Elizabeth A. Spinney

BOS_469629_1/EANDERSON

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| FIRST PIONEER FARM CREDIT, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-12508 GAO |
| FIRST PIONEER CREDIT UNION, | ) ) | |
| Defendants. | ) ) ) | |

## AFFIDAVIT OF ERIN SEPE IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Erin Sepe, on oath do declare as follows:

1.  I am a loan officer in the Enfield, Connecticut branch of First Pioneer Farm Credit, ACA.[1]

2.  I have received several inquiries at First Pioneer from members of the community, including current and potential customers, who had confused the Credit Union with First Pioneer.

3.  For example, I have received calls at First Pioneer from members of the community commenting on the institution's new building and new branch location, believing the Credit Union's new building and branch location were that of First Pioneer.

4.  On one occasion, a customer contacted me at First Pioneer to address First Pioneer opening another branch, referring to the Credit Union's new branch in Wilbraham,

---

[1] All terms have the meaning provided in First Pioneer's Memorandum of Law in Support of its Motion for Preliminary Injunction.

Massachusetts, and asked why First Pioneer had not informed its customers of the branch opening.

5. On another occasion, a potential customer contacted me at First Pioneer and complained that it took her over two weeks to get First Pioneer's correct phone number due to confusion with other First Pioneer entities.

6. At First Pioneer's holiday party in 2003, I noticed that the local restaurant holding the event displayed table cards to indicate which tables at the party belonged to First Pioneer Farm Credit had mistakenly used the Credit Union name instead.

Signed under the pains and penalties of perjury 3rd day of December, 2004.

Erin Sepe

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

Elizabeth A. Spinney

- 2 -

Massachusetts, and asked why First Pioneer had not informed its customers of the branch opening.

5. On another occasion, a potential customer contacted me at First Pioneer and complained that it took her over two weeks to get First Pioneer's correct phone number due to confusion with other First Pioneer entities.

6. At First Pioneer's holiday party in 2003, I noticed that the local restaurant holding the event displayed table cards to indicate which tables at the party belonged to First Pioneer Farm Credit had mistakenly used the Credit Union name instead.

Signed under the pains and penalties of perjury 3rd day of December, 2004.

_____
Erin Sepe

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

Elizabeth A. Spinney

- 2 -

BOS_469620_1/EANDERSON

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

| | |
|---|---|
| FIRST PIONEER FARM CREDIT, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | 04-12508 GAO |
| v. ) | |
| ) | |
| FIRST PIONEER CREDIT UNION, ) | |
| ) | |
| Defendants. ) | |

---

## AFFIDAVIT OF ROBERT WIGMORE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

I, Robert J. Wigmore, on oath do declare as follows:

1.  I am a loan officer for First Pioneer Farm Credit, ACA.[1]

2.  As a loan officer, I have received several inquiries from members of the community, including current and potential customers, who had confused the Credit Union with First Pioneer.

3.  In meetings or telephone conversations with borrowers of First Pioneer Farm Credit, a number of borrowers have asked when First Pioneer would be moving into its new office in Wilbraham, Massachusetts, erroneously referring to First Pioneer Credit Union's new office.

4.  Borrowers often request meetings with First Pioneer Farm Credit at its Wilbraham office, erroneously believing the Credit Union's new Wilbraham office belongs to First Pioneer.

---

[1] All terms have the meaning provided in First Pioneer's Memorandum of Law in Support of its Motion for Preliminary Injunction.

Signed under the pains and penalties of perjury 3rd day of December, 2004.

Robert J. Wigmore
Robert J. Wigmore

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

Elizabeth A. Spinney

BOS_BOS_469350_1.DOC/EANDERSON

Signed under the pains and penalties of perjury 3rd day of December, 2004.

_____
Robert J. Wigmore

## CERTIFICATE OF SERVICE

I, Elizabeth A. Spinney, hereby certify that on this 3rd day of December, 2004, I caused a copy of the foregoing to be served by fax and first-class mail upon the attorney of record for the defendant.

_____
Elizabeth A. Spinney

BOS_469350_1/EANDERSON